## Augustus Newell v. Christ Rahn, Adm.

1. NEGLIGENCE—*Must be Shown.*—Where the evidence fails to show that the injury was the result of the defendant's negligence there can be no recovery.

**Trespass on the Case.**—Death from negligence. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the March term, 1896. Reversed. Opinion filed May 14, 1896.

STEPHEN G. SWISHER and F. H. GANSBERGEN, attorneys for appellant.

CASE & HOGAN, attorneys for appellee; ANDREW J. HIRSCHL, of counsel.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was an action brought by the administrator of the estate of a deceased person to recover damages for the death of such person, produced, as alleged, by the negligence of the appellant.

The deceased was fifteen years old when the accident occurred, and had worked for appellant for sixteen months, in his organ factory.

On the day that the deceased received the injuries from which he shortly died he worked at a small planing machine, which he fed with boards about three feet long, one inch thick, and from four and a quarter to seven and a quarter inches wide. That machine seems to have been operated by two belts, one known as the driving belt, which operated the planer proper, and the other a shorter belt known as the feed belt, which operated the feeder. The driving belt descended to the machine from a pulley near the ceiling of the room, and the feed belt, which was only about seven feet in full length, reached from one pulley to another, both upon different parts of the machine as an entirety.

No witness saw the deceased at the moment of the accident, and it is matter of conjecture only as to just how it happened.

The theory of the appellee is that while the deceased was at his work and in the exercise of due care for his safety, the feed belt flew off and hit him the blow that caused his death.

As we read the evidence, this theory is not supported by the facts.

The feed belt, it is true, was off and lying upon the floor not far from the body of the deceased, when, the moment after a crack like a sharp report was heard, which attracted the attention of other workmen, the deceased was first seen injured and lying upon the floor.

There were only two witnesses, one for the appellee and one for the appellant, who saw the deceased and the belt a sufficiently short time before the accident to be able to testify concerning the situation in a manner at all helpful to an elucidation of the real fact of how the accident occurred.

The witness Josephson, for the appellee, testified upon direct examination that when the deceased got hurt there was a noise; that he looked around and then ran up to where the deceased was lying; that he did not see the deceased working at the machine "just before he got hurt, before I (the witness) heard the noise. The machine stopped, and then I looked out of the window, and when I was looking there I heard the noise, and I looked around and he was lying there."

Q. "About how many minutes was that in between?"
A. "About one or two."

Upon cross-examination this witness testified that when the deceased was at work feeding the machine he stood upon its south side, and that he, the witness, stood on the opposite side of the machine taking out the boards.

The witness was then asked concerning the belt, and the questions and his answers were as follows:

"Q. Did it hurt anybody when it came off? A. Not that I know of.

Q.  Were you there when it came off ?  A.  Yes, sir.

Q.  You didn't see anybody hurt there by that belt ?  A. No, sir.

Q.  After the belt came off it stopped the machine ?  A. Yes, sir.

Q.  You walked over to the window and looked out ? A.  Yes, sir.

Q.  Do you know where William Rahn was standing when you went to the window ?  A.  He was standing in the same place that I went round.

Q.  That is here (indicating), this feeding place ?  A. Yes, sir.

Q.  Then when you looked around you heard a crash ? A.  Yes, sir.

Q.  When you looked around where did you see William Rahn ?  A.  He was lying on the east side of the machine, a little north.

Q.  A little north of the east side of the machine ?  A. Yes, sir."

It would therefore appear that by appellee's own witness it was proved that the belt in question had come off before the witness had gone to the window, and before the deceased was hurt.

But if there were any doubt about it, there can, we think, be none when we consider, also, the testimony of the witness Phillips, for the appellant.  He was working at a machine known as a jointer, a few feet removed from the planer, and testified that he saw the deceased a few seconds before the accident happened.  He was questioned, and answered as follows:

" Q.  Do you know what he was doing there ?  A.  When I seen him ?

Q.  Yes.  A.  He had a stick in his hand, and was playing with that belt that runs up, when I seen him.

Q.  What do you call that belt that runs up ?  A.  That is the driving belt.

Q.  How long was that before the accident took place ? A.  Only a few seconds.

Q. What was the position of your body toward him? Was your back to him or was your face to him? A. When I saw him doing that I was facing him.

Q. Describe to the jury what he was doing. Was the machine running? A. The machine was running at that time. He got a stick and was touching it up.

Q. Was the lower belt there, the feed belt, on? A. The lower belt was off.

Q. The lower part of the machine, then, was not running? A. The feed part.

Q. You say he was tapping? A. Yes.

Q. What was he tapping with? A. He had got a board, or stick, I call it, somewhere between two and three inches wide, and was tapping it as it was running.

Q. Let me ask you if this stick (exhibiting a stick) is anything like the stick that he had? A. It is similar to that. It might have been a little bit—not quite so wide probably; I didn't measure it. That is similar to the stick.

Q. Now, can you show the jury about how he was tapping that belt when you saw him? A. A hitting the belt this way, and tapping it up; the driving belt, that was running when I seen him. I turned around, and when I turned around he was doing that. When I turned around and had my face to him, he put the stick down like that, and he stood in a position looking down on the floor. The belt was on the floor; the little belt.

Q. That is, this side belt here? A. Yes; that is the feed belt. I turned around to go to my work again, and that was the last I seen him before he was hurt. My attention was called by hearing a crack; about two seconds, two or three seconds, I can't say exactly; it was a very few seconds, I turned around to my machine; of course my back was to him at that time, then, and I heard this crack like you take a stick and crack it, or anything like that—a very sharp report—and I looked around, and he was laying to the north, on the east side of the machine, on his back.

Q. Do you know how he was injured? A. No, sir.

Q. Do you know where that feed belt was lying when

he was injured? A. It was laying down pretty near the same position as it is now, underneath the driving belt pulley."

Cross-examination by Mr. Hogan:

" I testified before the coroner. I don't quite remember whether I spoke anything about tapping the belt with a stick.

Q. Don't you know that you testified before the coroner that he was looking toward the planer? A. No, I testified that he was looking down toward the belt, to the best of my recollection.

Q. You recollected it then better than you do now, didn't you? A. Well, that is what I understood; at least that is what I believe that I testified, that he was looking down, looking down at the belt or looking down toward it.

Q. Then in about a second you heard a fall or crack? A. A second or two, or three; I couldn't say exactly.

Q. Don't you know that you testified before the coroner that you thought he was trying to put the belt on? A. They asked me an opinion, if I could form an opinion how it was done, I believe, and I said I could not, unless he was trying to put on, or—well, unless he was trying. I believe I testified that."

Such is all the evidence, aside from the proved fact that the same belt had flown off about a week before, unless it be in the character of the blow inflicted upon the deceased, from which can be gathered any information as to how the accident occurred.

The visible hurt that deceased received is described as, " on the side of his head, on the right side of the temple. It was a closed wound, with the exception that it was bruised. It was about the size of a hand."

Such an injury could have, as it seems to us, as well been inflicted by a wide stick, such as the witness Phillips testified to seeing deceased use in " playing with " or " tapping up " the driving belt, as by being struck with a heavy leather belt.

The intimation contained in the last answer of the last witness, that the deceased might have been struck when he

was trying to put the belt on, does not aid the plaintiff's case for it was proved that he had been instructed never to try to put on a belt if it came off, and that in any case of the machinery getting out of order, to report the fact to the foreman, who would attend to it.

With the feed belt off, the feeding part of the machine would stop, while the planer itself would continue to run by force of the driving belt. It was the stopping of the feeder that set the deceased, who fed it, and the witness Josephson, who took away the boards from the other part of the machine, at liberty. Whether in the interval that followed, the deceased was injured by the stick he had in his hand catching in the driving belt that continued to run, or in some other way, we can not say; but it is plain enough that he was not hurt by the feed belt coming off, or by any negligence of the defendant, or by any means which resulted from the performance of any duty by the deceased.

Considering all the evidence, we see no ground for a recovery by the appellee, and we therefore reverse the judgment without remanding the cause.